NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0020n.06
Case No. 23-5862

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JERRY HIGGINS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | KENTUCKY |
| LINCOLN ELECTRIC COMPANY, INC., | ) | |
| | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: SILER, CLAY, and READLER, Circuit Judges.

**SILER, Circuit Judge.** This appeal arises from an unfortunate set of circumstances: The Lincoln Electric Company, Inc. ("Lincoln") provided Jerry Higgins with a Benefit Election Form suggesting that his annual long-term disability ("LTD") benefits would total $92,260.80, only for Higgins to discover after becoming disabled that the plan documents unambiguously capped those benefits at $60,000. Although this discrepancy led Higgins to forgo supplemental disability insurance, ERISA requires courts to enforce plan documents as written, and established precedent demands that a plaintiff meet a heightened standard to prevail on an ERISA-estoppel claim when plan terms are unambiguous. Because Higgins's allegations do not satisfy several critical elements of that heightened standard, the district court dismissed his claim under Federal Rule of Civil Procedure 12(b)(6). We affirm.

**I.**

Higgins was employed by Lincoln as a sales representative and participated in its employee welfare benefits plan, which included LTD benefits insured by Metropolitan Life Insurance

Company ("MetLife").  Under the plan, eligible employees could elect between a "Core Plan" and a "Buy Up Plan."  The Core Plan capped the monthly LTD benefit at 60% of the first $5,555 of predisability earnings, up to $3,333 per month (approximately $39,996 annually), while the Buy Up Plan capped it at 60% of the first $8,333 of predisability earnings, up to $5,000 per month (approximately $60,000 annually).  The group policy's integration clause specified that it, along with its exhibits, formed the "entire contract," ensuring that only these unambiguous plan documents could define the participants' benefits.

On July 7, 2017, Lincoln provided Higgins with a Benefit Election Form indicating he would receive $69,195.60 in "Basic Coverage" plus $23,065.20 in "Supplemental Coverage," totaling $92,260.80 per year in LTD benefits.  Higgins alleges that he relied on this representation and thus did not purchase any additional disability insurance coverage.  In August 2017, after Higgins became disabled and applied for LTD benefits, Lincoln informed him that his benefits were limited to $60,000 per year under the plan's unambiguous terms, not $92,260.80 as reflected on the Benefit Election Form.

On July 11, 2022, Higgins filed suit asserting, among other claims, that Lincoln should be estopped from denying him the higher benefits shown in the erroneous Benefit Election Form. Lincoln moved to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the plan documents unambiguously capped Higgins's LTD benefits at $60,000 annually and that Higgins failed to state a plausible ERISA-estoppel claim as a matter of law.  The district court granted Lincoln's motion, holding that because the plan terms were unambiguous, Higgins was required to satisfy the heightened eight-element standard for ERISA-estoppel claims and that he failed to plausibly allege several of these required elements.

## II.

Higgins argues that the district court erred by applying the heightened eight-element test for ERISA-estoppel claims triggered by unambiguous plan terms, contending instead that the plan was ambiguous or that he satisfied the elements under the less demanding standard. ERISA principles give primacy to written plan documents, requiring courts to enforce unambiguous terms as written. *See US Airways, Inc. v. McCutchen*, 569 U.S. 88, 100–01 (2013); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 403 (6th Cir. 1998) (en banc). When a plan's terms are unambiguous, a plaintiff asserting ERISA-estoppel must establish the five elements of equitable estoppel recognized in *Sprague* and three additional elements set forth in *Bloemker v. Laborers' Loc. 265 Pension Fund Bloemker*, 605 F.3d 436, 442–44 (6th Cir. 2010).

Higgins does not dispute that the official plan documents capped his LTD benefits at $60,000 annually. Nor does he allege any plan ambiguity in his complaint. The Benefit Election Form he received is not part of the official plan documents and cannot alter the plan's clearly stated benefit limits. *See Sprague*, 133 F.3d at 403; *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 429 (6th Cir. 2007). Because the plan terms are unambiguous, the heightened eight-element *Bloemker* standard applies. *See Bloemker*, 605 F.3d at 444.

The eight elements require a showing of: (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the defendant; (3) intent by the defendant that the representation be acted upon; (4) unawareness of the true facts by the plaintiff; (5) detrimental and justifiable reliance by the plaintiff; plus (6) a written representation; (7) plan provisions which, although unambiguous, did not allow for individual calculation of benefits; and (8) extraordinary circumstances. *Id.* at 442, 444; *Sprague*, 133 F.3d at 403.

Although Higgins adequately alleged a material misrepresentation by pointing to the erroneous Benefit Election Form, he failed to plausibly allege several other required elements. He did not plead facts showing that Lincoln knew the true facts and intended to deceive him or acted with gross negligence akin to constructive fraud. *See Zirbel v. Ford Motor Co.*, 980 F.3d 520, 525 (6th Cir. 2020); *Crosby v. Rohm & Haas Co.*, 480 F.3d 423, 431 (6th Cir. 2007). Nor did he plausibly allege that Lincoln intended him to rely on the misstatement or that Lincoln stood to gain from such reliance. *See Crosby*, 480 F.3d at 427, 431.

Higgins also fails to show that he was unaware of the true facts in a manner that justifies reliance. He had access to the plan documents, which clearly established a $60,000 yearly cap on LTD benefits, making reliance on a contradictory Benefit Election Form unreasonable as a matter of law. *See Sprague*, 133 F.3d at 404. For the same reason, he cannot demonstrate detrimental and justifiable reliance on the Benefit Election Form. *See id.*

Although the misrepresentation was in writing, Higgins does not show that the unambiguous plan terms prevented him from calculating his benefits. *See Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 350 (6th Cir. 2018). Nor does he allege extraordinary circumstances—such as affirmative misconduct or repeated assurances—that would override the unambiguous plan language. *See Bloemker*, 605 F.3d at 439, 443–444.

Higgins claims the district court should not have applied the heightened standard or that he met all elements even under that standard, but his arguments are conclusory and unsupported by the factual allegations in the complaint. Because Higgins fails to plausibly satisfy multiple essential elements under *Bloemker*, the district court correctly dismissed his ERISA-estoppel claim.

The district court did not address whether Higgins's claim was time-barred, noting it was unnecessary given that his claim failed on the merits. We agree that there is no need to consider the statute of limitations issue, as the failure on the merits fully resolves this appeal.

**III.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.